**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | | |
|---|---|---|
| SANCOM INC., | : | 1:08-CV-06933 (JGK) |
| | : | |
| Plaintiff, | : | **ECF CASE** |
| | : | |
| v. | : | <u>JURY TRIAL DEMANDED</u> |
| | : | |
| AT&T CORP., | : | |
| | : | |
| Defendant. | : | |

-------------------------------------------------------------:

### ANSWER

Defendant AT&T Corp. ("AT&T") by its undersigned counsel, Sidley Austin LLP, as for

its answer and defenses to Plaintiff's Complaint ("Complaint"), dated August 4, 2008, states as

follows:

1.     AT&T admits that this action purports to collect amounts due under tariffs.

AT&T denies the remaining allegations of paragraph 1.

2.     AT&T lacks knowledge or information sufficient to form a belief about the truth

of the allegations in paragraph 2, and those allegations are therefore denied.

3.     AT&T admits the allegations in paragraph 3.

4.     AT&T admits the Court has subject matter jurisdiction over claims that seek to

collect amounts allegedly due under federal tariffs.  AT&T denies the remaining allegations in

paragraph 4.

5.     AT&T admits that it resides in this judicial district.  Although venue is proper,

AT&T denies that this is a convenient forum for this litigation, and reserves its rights to seek to

transfer the venue of this proceeding pursuant to 28 U.S.C. § 1404.

6.      AT&T lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 6, and those allegations are therefore denied.

7.      AT&T admits the allegations in paragraph 7.

8.      AT&T admits that some calls were routed to and from AT&T's long distance network to and from facilities that were purportedly operated or leased by Plaintiff, but AT&T denies that Plaintiff provided access services to AT&T.  AT&T denies all other allegations in paragraph 8.

9       AT&T admits that Plaintiff has provided AT&T with invoices for services, but denies that Plaintiff provided the services pursuant to Plaintiff's tariffs.  AT&T denies the remaining allegations in paragraph 9.

10.      AT&T admits that it has withheld some payments for services that Plaintiff has billed to AT&T, but AT&T denies that Plaintiff provided the services pursuant to Plaintiff's tariffs.  AT&T denies the remaining allegations in paragraph 10.

## COUNT I
## BREACH OF CONTRACT

11.      AT&T hereby reincorporates each and every response to the previous allegations as if set forth fully herein.

12.      AT&T admits that Plaintiff has filed tariffs with the FCC.  AT&T denies the remaining allegations of paragraph 12.

13.      AT&T denies the allegations of paragraph 13.

14.      AT&T admits that it has withheld some payments for services that Plaintiff has billed to AT&T, but AT&T denies that Plaintiff provided the services pursuant to Plaintiff's tariffs.  AT&T denies the remaining allegations in paragraph 14.

15.      AT&T denies the allegations in paragraph 15.

## COUNT II
## BREACH OF IMPLIED CONTRACT RESULTING
## FROM VIOLATION OF TARIFFS

16.     AT&T hereby reincorporates each and every response to the previous allegations as if set forth fully herein.

17.     AT&T admits that Plaintiff has filed tariffs with the FCC.  AT&T denies the remaining allegations of paragraph 17.

18.     AT&T denies the allegations of paragraph 18.

19.     AT&T admits that it has withheld some payments for services that Plaintiff has billed to AT&T, but AT&T denies that Plaintiff provided the services pursuant to Plaintiff's tariffs.  AT&T denies the remaining allegations in paragraph 19.

20.     AT&T denies the allegations in paragraph 20.

## COUNT III
## VIOLATION OF SECTION 201 OF THE
## COMMUNICATIONS ACT, 47 U.S.C.§ 201

21.     AT&T hereby reincorporates each and every response to the previous allegations as if set forth fully herein.

22.     AT&T denies the allegations of paragraph 22.

23.     AT&T admits that it has withheld some payments for services that Plaintiff has billed to AT&T, but AT&T denies that Plaintiff provided the services pursuant to Plaintiff's tariffs.  AT&T denies the remaining allegations in paragraph 23.

24.     AT&T admits that the language of Section 201(b) of the Communications Act relates to, among other things, unjust and unreasonable practices, but avers that the language of the Act speaks for itself.  AT&T denies the remaining allegations of paragraph 24.

25.     AT&T denies the allegations in paragraph 25.

NY1 6735211v.1

26.     AT&T denies the allegations in paragraph 26.

27.     AT&T denies the allegations in paragraph 27.

28.     AT&T denies the allegations in paragraph 28.

29.     AT&T denies the allegations in paragraph 29.

**COUNT IV**
**VIOLATION OF SECTION 203 OF THE**
**COMMUNICATIONS ACT, 47 U.S.C. § 203**

30.     AT&T hereby reincorporates each and every response to the previous allegations as if set forth fully herein.

31.     AT&T denies the allegations of paragraph 31.

32.     AT&T admits that it has withheld some payments for services that Plaintiff has billed to AT&T, but AT&T denies that Plaintiff provided the services pursuant to Plaintiff's tariffs.  AT&T denies the remaining allegations in paragraph 32.

33.     AT&T admits that the last sentence of paragraph 33 accurately quotes a portion of Section 203 of the Communications Act, but avers that the language of the Act speaks for itself. AT&T denies the remaining allegations in paragraph 33.

34.     AT&T denies the allegations of paragraph 34.

35.     AT&T denies the allegations of paragraph 35.

36.     AT&T denies the allegations of paragraph 36.

37.     AT&T denies the allegations of paragraph 37.

**COUNT V**
**COLLECTION ACTION PURSUANT TO STATE TARIFF**

38.     AT&T hereby reincorporates each and every response to the previous allegations as if set forth fully herein.

39.     AT&T denies the allegations of paragraph 39.

4

40.     AT&T admits that it has withheld some payments for services that Plaintiff has billed to AT&T, but AT&T denies that Plaintiff provided the services pursuant to Plaintiff's tariffs.  AT&T denies the remaining allegations in paragraph 40.

41.     AT&T denies the allegations of paragraph 41.

## COUNT VI
## UNJUST ENRICHMENT

42.     AT&T hereby reincorporates each and every response to the previous allegations as if set forth fully herein.

43.     AT&T admits that some calls were routed to and from AT&T's long distance network to and from facilities that were purportedly operated or leased by Plaintiff.  AT&T denies the remaining allegations in paragraph 43.

44.     AT&T denies the allegations of paragraph 44.

45.     AT&T denies the allegations of paragraph 45.

## DEFENSES

AT&T Corp. asserts the following additional defenses without assuming the burden of proof on such defenses that would otherwise rest on Plaintiff and reserves its rights to assert additional defenses when, and if, appropriate.

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

## SECOND DEFENSE

Plaintiff's claims are barred in whole or in part by its inequitable conduct and unclean hands.

NY1 6735211v.1

## THIRD DEFENSE

Plaintiff may not obtain relief under any state or federal tariff because Plaintiff is in violation of such tariffs.

## FOURTH DEFENSE

Plaintiff's claims for access charges are barred because Plaintiff did not provide such services.

## FIFTH DEFENSE

Plaintiff's claims are barred because it has engaged in ongoing violations of the Communications Act, including, but not limited to, 47 U.S.C. §§ 201 and 203.

## SIXTH DEFENSE

Plaintiff's claim for unjust enrichment/quantum meruit is barred because Plaintiff's purported right to recover proper and lawful access charges, if any, is governed by tariff.

Wherefore, AT&T requests that the Complaint be dismissed with prejudice, and that the Court enter judgment in its favor and against the Plaintiff, award AT&T attorneys' fees, costs and expenses, and grant AT&T such further relief as is just and equitable.

NY1 6735211v.1

## COUNTERCLAIMS OF AT&T

1.      Defendant AT&T Corp. ("AT&T") by its undersigned counsel, Sidley Austin LLP, for its counterclaims against Plaintiff Sancom Inc. ("Counterclaim Defendant") states as follows:

## NATURE OF THE COUNTERCLAIMS

2.      AT&T brings these Counterclaims seeking damages, a declaratory ruling, and other appropriate remedies to redress overcharges for services billed by Counterclaim Defendant to AT&T, purportedly under its filed tariffs, which the Counterclaim Defendant did not actually provide.

3.      As described below, Counterclaim Defendant entered into business arrangements with "Free Calling Providers" or "FCPs" whereby the FCPs offered to the public various "free" telephone services – *e.g.,* pornographic chat, conferencing, and international calling – to persons who call telephone numbers controlled by the Counterclaim Defendant.  These advertisements generated millions of minutes of calls over AT&T's long-distance network to the advertised telephone numbers.  The Counterclaim Defendant then billed AT&T for a service contained in its tariffs called "terminating switched access service" for each minute associated with each such call, and then shared those revenues with the FCPs.

4.      As explained below, however, Counterclaim Defendant has not, in fact, provided terminating switched access service under its tariffs to AT&T for such calls.  To qualify as terminating switched access service under the Counterclaim Defendant's tariffs, the Counterclaim Defendant must use "common terminating, switching and trunking facilities" to "terminate calls . . . to an end user's premises" in the local area served by the Counterclaim Defendant.  On information and belief, the calls at issue here do not satisfy these requirements,

7

and Counterclaim Defendant thus has not provided the terminating switched access services for which it has billed AT&T.

5.     As such, Counterclaim Defendant (i) has violated Section 203 of the Communications Act, 47 U.S.C. § 203, by charging for services in a manner that is inconsistent with its filed tariffs; (ii) has violated Section 201(b) of the Communications Act, 47 U.S.C. § 201(b), by engaging in the unjust and unreasonable practice of charging for services that it did not provide; (iii) has engaged in fraudulent conduct by billing AT&T for services that it did not provide; (iv) has been unjustly enriched by seeking and obtaining charges from AT&T to which it was not and is not entitled; and (v) has participated in a civil conspiracy with the FCPs to engage in such unlawful conduct.   Accordingly, AT&T seeks appropriate relief for such unlawful conduct and a declaratory ruling to prevent such conduct in the future.

### JURISDICTION AND VENUE

6.     This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331, 1337, and 47 U.S.C. § 207 because AT&T's claims arise under the federal Communications Act, a law of the United States.  This Court has jurisdiction over AT&T's state law claims under 28 U.S.C. § 1332.  In addition, this Court has supplemental jurisdiction over the state law claims asserted in this action under 28 U.S.C. § 1367(a).  Finally, this Court has jurisdiction over AT&T's requests for declaratory relief under 28 U.S.C. §§ 2201 and 2202.

7.     To the extent that venue is proper in this judicial district regarding the claims of the Complaint, venue is proper in this judicial district under 28 U.S.C. § 1391 as to AT&T's counterclaims.  Notwithstanding the foregoing, AT&T fully reserves its rights to seek to transfer the venue of this proceeding pursuant to 28 U.S.C. § 1404.

NY1 6735211v.1

## PARTIES

8.      Defendant/Counterclaim Plaintiff AT&T is a New York corporation that provides communications and other services to U.S.-based and foreign-based customers and has its principal place of business in Bedminster, New Jersey.  AT&T is a wholly-owned subsidiary of AT&T Inc.

9.      Plaintiff/Counterclaim Defendant Sancom Inc. d/b/a Mitchell Telecom, upon information and belief, is a corporation organized and existing under the laws of South Dakota, with its principal place of business in Mitchell, South Dakota.

### COUNTERCLAIM DEFENDANT'S UNLAWFUL SCHEME

**A.      The Access Charge Regime Governing Domestic Long-Distance Calls.**

10.     Traditionally, telephone calls have been divided into local calls and long distance calls.  Local calls are placed within a designated calling area, sometimes called an "exchange." An exchange is served by one or more local exchange carriers ("LECs").  LECs typically own or lease wires and switches used to initiate calls from and to complete telephone calls to their customers.  Thus, when a caller calls a neighbor living down the street, that call originates and terminates within the same local exchange and the caller uses the local exchange service provided by the LEC in connection with that call.

11.     There are two general types of LECs:  "incumbent" local exchange carriers ("ILECs"), which are the traditional providers of local exchange services, and "competitive" local exchange carriers ("CLECs"), which are new entrants that offer local services in competition with ILECs.

12.     Domestic long distance calls are carried from one local calling area (*i.e.,* local exchange) to another local calling area either within the same state or between different states. Long distance carriers, also known as "interexchange carriers" or "IXCs," typically carry these

types of calls from the originating exchange to the terminating exchange.  Thus, when a South Dakota resident calls a friend in New York, the South Dakota resident must use a long distance service.

13.    AT&T and its affiliates provide both local and long distance services.  However, AT&T and its affiliates do not own local exchange facilities throughout the country.  In those areas where AT&T does not operate local exchange facilities, AT&T typically uses "switched access services" to originate and terminate long-distance calls.  The originating and terminating switched access services are provided by LECs that operate local exchange facilities in the areas where the calls originate and terminate.

14.    For example, a long distance telephone call from an AT&T long distance customer in Albany, New York to someone in Sioux Falls, South Dakota, may be routed as follows:  When the caller in Albany dials the phone number of the Sioux Falls resident, the call is first routed by a LEC in New York from the building where the caller is located to an AT&T "point of presence," which is a location where the LEC's local network connects to AT&T's long distance network.  This LEC service is called "originating" switched access service, and the Albany LEC bills AT&T for that service.  AT&T then carries the call over its long distance network to an AT&T point of presence near Sioux Falls, where it hands the call off to a LEC that terminates the call to the called party in Sioux Falls.  This LEC service is called "terminating" switched access service, and the Sioux Falls LEC bills AT&T for that service.

15.    For switched access services, it is the long distance company's customers and the called party, not the long distance companies themselves, that choose their local exchange carriers.  Consequently, once a long-distance customer chooses to take service from a particular LEC, the long-distance carrier that serves that customer must use the customer-chosen LEC's

access services to place calls from the long-distance carrier's customers.  Likewise, the long-distance carrier must use the access services provided by the called party's  LEC to complete calls to the called party.  Thus, as a general matter, providers of terminating switched access services are the exclusive providers of such service to the customers they serve in their local calling areas, and AT&T has no choice as to the entity from whom it obtains terminating switched access service.

**B.     Counterclaim Defendant Operates In A Remote Area Of South Dakota.**

16.     The Counterclaim Defendant operates in a remote area of South Dakota.  The Counterclaim Defendant does not connect directly to AT&T's network point of presence for that area.  Rather, Counterclaim Defendant connects indirectly to AT&T.

17.     Upon information and belief, Counterclaim Defendant routes calls to and receives calls from AT&T via the "South Dakota Network," which acts as a hub for long distance traffic. On information and belief, Sancom and/or its affiliates assisted in creating the entity that owns the South Dakota Network, and/or holds an equity or ownership interest in such entity.

18.     Because the Counterclaim Defendant has no direct connection between its facilities and AT&T's facilities, AT&T cannot determine precisely how the Counterclaim Defendant's facilities or networks are arranged or how it exchanges traffic with other carriers or networks, such as the South Dakota Network or Qwest Corporation, the ILEC operating in and around Mitchell, South Dakota.

**C.     Counterclaim Defendant's "Traffic Pumping" Schemes.**

19.     On information and belief, the Counterclaim Defendant has undertaken business relationships with FCPs designed to exploit the Counterclaim Defendant's exclusive control over access to certain telephone numbers.

20.    On information and belief, Counterclaim Defendant has entered into revenue sharing agreements with FCPs that promote, over the Internet and other media, a variety of "free" calling services,[1] such as pornographic and other chat lines, conference calling, and international calling.[2]  The FCPs instruct callers to dial telephone numbers assigned to the FCPs by the Counterclaim Defendant, resulting in the calls being routed to local exchanges in South Dakota, or other places.  Once routed, however, the calls are not connected to any actual residents of these communities.  Instead, they are routed to equipment owned by Counterclaim Defendant or the FCPs.  For the free "chat" and conferencing services, the caller is connected via a bridge to other calls; for free international services, the call is sent to a foreign telephone number chosen by the caller.

21.    Counterclaim Defendant bills AT&T and other long distance carriers for terminating access services for each minute of use of the "free" calling services – as though the calls were ordinary long distance calls placed to actual residents of Counterclaim Defendant's local exchanges.  On information and belief, pursuant to revenue sharing arrangements, Counterclaim Defendant then kicks back to the FCPs a portion of the access revenues that is collected from AT&T and other long distance carriers.  As a result of these "traffic pumping" schemes, the number of minutes of calls routed to Counterclaim Defendant far exceeds the volumes of calls that normally would be routed to these sparsely populated communities. Likewise, the access bills that Counterclaim Defendant sends to AT&T and other long distance carriers far exceed the bills for access in similarly-sized communities.

---

[1] Although FCPs generally offer these services as "free" to the caller, FCPs sometimes require callers to pay a very small nominal fee.  All such services are referred to herein as "free" services.

[2] AT&T understands that the FCPs offer numerous other "free" or virtually "free" services, including voicemail and calling card services.  For simplicity, this Complaint focuses on the international calling, conferencing, and chat room services offered by the FCPs.  But the allegations herein also apply to the voicemail, calling card, and any other services that may be exposed through the discovery process.

22.     Simply put, under these traffic pumping schemes, the FCPs stimulate long distance calls by offering various calling services to the public free of charge.  When a call is made to an FCP's service, Counterclaim Defendant routes the call to or through equipment either owned by the FCP or otherwise provided by Counterclaim Defendant, charge AT&T terminating switched access services for that call, and then kickback a portion of the revenues from those charges to the FCP.

23.     As noted, the long distance traffic generated by these schemes is very significant.  For example, in May 2008, Counterclaim Defendant billed AT&T for more than 26 million minutes of use, which, as explained below, is about 10 times higher than the minutes of use before these schemes became prevalent.

**D.     The Dispute Between AT&T And The Counterclaim Defendant.**

24.     As of October 2006, AT&T had been receiving bills from the Counterclaim Defendant that included terminating switched access charges for switched access services the Counterclaim Defendant supposedly was providing to AT&T in sparsely populated local exchange areas in South Dakota.  The volume of traffic on the bills through October 2006 was not entirely inconsistent with expected volumes for a carrier serving a rural area.  For example, in the period from January, 2006 through October, 2006, Counterclaim Defendant's average monthly billed volume was approximately 2.5 million minutes, with a high of a little over 3.0 million minutes.

25.     Starting with the bill for November 2006, however, the volume of minutes for which Counterclaim Defendant billed AT&T increased dramatically.  From November 2006 through June, 2008, the average monthly billed volume increased to 18.9 million minutes, with a high of 26.6 million minutes in May, 2008.

13

26.     Because Counterclaim Defendant does not connect directly to AT&T and for other reasons, AT&T needed information from Counterclaim Defendant to assess whether the charges in its bills were consistent with its tariffs and federal law.  Accordingly, on December 26, 2007, AT&T sent Counterclaim Defendant a letter requesting information to allow AT&T to properly evaluate Counterclaim Defendant's bills.

27.     The type of basic information AT&T requested was and is not readily available to AT&T from other sources for a variety of reasons, including because, as noted, the Counterclaim Defendant is a privately owned company that does not directly connect to AT&T's network. Counterclaim Defendant, however, refused to provide responses to AT&T's requests for information.

28.     As of January, 2008, the volume of growth had continued unabated, and Counterclaim Defendant's failure to respond to AT&T's request for information led AT&T to conclude that Counterclaim Defendant was engaged in unlawful traffic pumping schemes. Therefore, starting with the bill dated January, 2008, AT&T began withholding payment of Counterclaim Defendant's bills, consistent with the terms of the tariff, which allows payments to be withheld pending a billing dispute.

**E.      The Counterclaim Defendant Is Not Providing Terminating Switched Access Under Its Tariffs With Respect To The Traffic Generated By The Traffic Pumping Schemes.**

29.     Based on AT&T's significant familiarity with traffic pumping schemes and the information available to AT&T about the particular schemes used by Counterclaim Defendant and the FCPs, it is AT&T's contention that Counterclaim Defendant has not provided terminating switched access services to AT&T for many of the calls for which it has billed AT&T.

14

30.     The Counterclaim Defendant's tariff states that "Switched Access Service, which is available to customers for their use in furnishing their services to end users, provides a two-point communications path between a customer designated premises and an end user's premises. It provides for the use of common terminating, switching, and trunking facilities and for the use of common subscriber plant of the Telephone Company.  Switched Access Service provides for the ability to originate calls from an end user's premises to a customer designated premises, and to terminate calls from a customer designated premises to an end user's premises in the LATA where it is provided."[3]  The tariff defines "end user" in relevant part as "any customer of an interstate or foreign telecommunications service that is not a carrier."

31.     The "customer designated premises" is AT&T's (or another long distance carrier's) point of presence.  Therefore, to qualify as a terminating switched access service under the Counterclaim Defendant's tariff, a long distance call carried by AT&T must use "common terminating, switching, and trunking facilities" and must "terminate" from AT&T's point of presence to an "end user's premises" within the local exchange where the Counterclaim Defendant operates.

32.     Based on its analysis of the Counterclaim Defendant's bills, it is clear that many of the calls billed to AT&T were routed to FCPs.  Upon information and belief, the services provided by these FCPs included free conferencing services, free chat line services and free international services.

33.     With respect to the FCPs' international calling services, the calls generated pursuant to those services clearly do not terminate in the local exchanges where the Counterclaim Defendant operates.  The end users of such calls are clearly the recipients of the

_____

[3] LATA stands for "local access and transport area" and it is a geographic area with boundaries that were set when the Bell System was separated in the 1980s.

calls, and because these are international calls, the end users' premises are located in foreign countries, not in the local exchanges served by the Counterclaim Defendant.  Thus, Counterclaim Defendant is not providing terminating switched access services to AT&T for calls to the FCPs' "free" international services.

34.     For the chat room and conference call services, key issues relevant to whether the Counterclaim Defendant is actually providing terminating access services include, among others, the location of the bridges used to provide the "free" services, who occupies the building(s) where the bridges are located, and what facilities are used to deliver calls to those bridges.

35.     For example, if the bridges used to provide the chat room and conferencing services are located outside of the area served by the Counterclaim Defendant, the Counterclaim Defendant by definition is not providing terminating access services for such calls.  Likewise, if the bridges (or equipment used to route international calls) are located either in a Qwest central office or in an equipment building operated by the Counterclaim Defendant, the bridges and/or equipment are not located at an "end user's premises" because Qwest and the Counterclaim Defendant are "carriers," and the definition of "end user" in the Counterclaim Defendant's tariff excludes "carriers," which again means that Counterclaim Defendant is not providing terminating switched access services for calls to those bridges.  Further, if the Counterclaim Defendant is not providing connections to the bridges (or equipment used to route international calls) using "common" facilities, then it is not providing terminating switched access service as defined in its tariffs.

36.     The Counterclaim Defendant has exclusive control over much or all of the information required to resolve these issues, but despite AT&T's request, it has refused to provide it.  Based on these refusals and AT&T's significant experience with traffic pumping

16

schemes, AT&T believes that many or all of the bridges or other equipment used in the provision of these free calling services are located outside of the local exchanges served by the Counterclaim Defendant, are located in buildings not occupied by the FCPs, or are served using facilities that are not common facilities.  Counterclaim Defendant, therefore, is not providing terminating switched access services for the chat room, conferencing, international, and other free calling service calls to the FCPs.

37.     Likewise, Counterclaim Defendant is not providing terminating switched access services for the free calling service calls generated by the FCPs' activities if the FCPs are not "end users" as that term is defined in the Counterclaim Defendant's tariff.  AT&T has requested that Counterclaim Defendant provide information that contradicts AT&T's understanding that FCPs do not qualify as "end users" under this definition, and the Counterclaim Defendant has refused to provide it.   Among other facts relevant to these issues, "users" of tariffed local telecommunications services (i) typically order the services under procedures set forth in the tariff; (ii) normally obtain these services at their residence or business and not within the local carrier's property; (iii) are billed regularly for the local services; and (iv) pay the tariffed rates, the taxes and the regulatory fees associated with those services.  Based on the Counterclaim Defendant's refusal to provide this type of information and AT&T's general understanding of traffic pumping schemes, AT&T believes that the FCPs do not qualify as "end users" under Counterclaim Defendant's tariff.  Further, the FCPs may themselves be carriers, and thus they would not be "end users" under the tariff even if they were otherwise like Counterclaim Defendant's other local customers.

38.     Thus, on information and belief, Counterclaim Defendant is not providing AT&T with terminating switched access services, as that term is defined in its tariffs, for the calls to the

17

"free" services offered by the FCPs, and the Counterclaim Defendant's bills to AT&T that include such charges are inconsistent with its filed tariff.

## COUNT I
### (Violation of Federal Tariffs and 47 U.S.C. § 203(c))

39.     AT&T repeats and re-alleges each and every allegation contained in paragraphs 1 through 38 of its Counterclaims as if set forth fully herein.

40.     Section 203(c) of the Communications Act, 47 U.S.C. § 203(c), states, in part, that "[n]o carrier . . . shall engage or participate in [interstate or foreign wire or radio] communication unless schedules have been filed and published in accordance with the provisions of this chapter, and with the regulations made thereunder" and that "no carrier shall (1) charge, demand, collect, or receive a greater or less or different compensation for such communication, or for any service in connection therewith, . . . than the charges specified in the schedule then in effect. . . ."

41.     Counterclaim Defendant has a tariff filed with the Federal Communications Commission ("FCC") that contains published rates, terms and conditions.  The tariff states that "Switched Access Service . . . provides a two-point communications path between a customer designated premises and an end user's premises.  It provides for the use of common terminating, switching, and trunking facilities and for the use of common subscriber plant of the Telephone Company.  Switched Access Service provides for the ability to originate calls from an end user's premises to a customer designated premises, and to terminate calls from a customer designated premises to an end user's premises in the LATA where it is provided."

42.     Counterclaim Defendant has collected and continues to attempt to collect payments from AT&T under this tariff for terminating switched access on calls to the "free" conferencing, chat room, and international calls offered by the FCPs.  On information and belief,

for the reasons stated above, Counterclaim Defendant has not and does not provide AT&T with terminating switched access services under Counterclaim Defendant's filed tariff for such calls.

43.     Counterclaim Defendant has violated 47 U.S.C. § 203(c) by charging and continuing to charge for terminating switched access services under its filed tariff in a manner that is contrary to the rates, terms, and conditions in its published tariff.

44.     AT&T has been damaged by Counterclaim Defendant's violations of Section 203(c), and prays for damages in an amount to be determined at trial, interest, attorneys' fees, court costs, declaratory relief, injunctive relief and such other relief as the Court may deem just and reasonable.

## COUNT II
### (Unreasonable Practice in Violation of 47 U.S.C. § 201(b); Billing For Services Not Provided)

45.     AT&T repeats and re-alleges each and every allegation contained in paragraphs 1 through 44 of its Counterclaims as if set forth fully herein.

46.     Counterclaim Defendant has engaged in and continue to engage in unjust and unreasonable practices in connection with its provision of interstate communications services, in violation of 47 U.S.C. § 201(b), which provides that "all . . . practices" for and in connection with interstate services "shall be just and reasonable," and "any such . . . practice . . . that is unjust and unreasonable is hereby declared to be unlawful." 47 U.S.C. § 201(b).

47.     Counterclaim Defendant has engaged in a scheme to knowingly charge AT&T and other long distance carriers for terminating switched access services pursuant to its tariff for long distance calls to the numbers advertised by the FCPs with which Counterclaim Defendant has a business relationship.

48.     On information and belief, Counterclaim Defendant did not provide terminating switched access services for those calls as that term is defined by its tariff.

49.     On information and belief, Counterclaim Defendant did not provide terminating switched access services for those calls, as provided for in the Act, including 47 U.S.C. § 153(16) (access services are "for the purpose of origination or termination of the telephone toll service"), and in governing rules and orders of the FCC.

50.     By deliberately charging, demanding, and collecting compensation for service under its tariff that it does not provide, Counterclaim Defendant has engaged in unjust and unreasonable practices in violation of 47 U.S.C. § 201(b).

51.     AT&T has been damaged by Counterclaim Defendant's violations of Section 201(b), and prays for damages in an amount to be determined at trial, interest, attorneys' fees, court costs, declaratory relief, injunctive relief and such other relief as the Court may deem just and reasonable.

## COUNT III
### (Fraudulent and Negligent Misrepresentation)

52.     AT&T repeats and re-alleges each and every allegation contained in paragraphs 1 through 51 of its Counterclaims as if set forth fully herein.

53.     The Counterclaim Defendant issued monthly bills to AT&T for interstate and intrastate access services purporting to inform AT&T of its access charge liability in each of those months.

54.     The access bills contained false information because they included charges for terminating switched access services for calls associated with the services of the FCPs that were not in fact terminating switched access services provided by Counterclaim Defendant.

55.     The Counterclaim Defendant knew, or should have known, that it did not provide terminating switched access services for the calls associated with the services of the FCPs.

56.     The Counterclaim Defendant knew, or should have known, that AT&T would rely upon the bills it submitted for access charges.

57.     AT&T justifiably relied upon the false information presented in the above-identified access charge bills from the Counterclaim Defendant that AT&T paid.

58.     AT&T incurred damages as a result of its justifiable reliance on statements by the Counterclaim Defendant that it knew or should have known were false.

59.     AT&T prays for damages from the Counterclaim Defendant in an amount to be determined at trial, interest, attorneys' fees, court costs, declaratory relief, injunctive relief and such other relief as the Court may deem appropriate.

**COUNT IV**
**(Unjust Enrichment)**

60.     AT&T repeats and re-alleges each and every allegation contained in paragraphs 1 through 59 of its Counterclaims as if set forth fully herein.

61.     Counterclaim Defendant, through its unlawful, wrongful, improper, unjust, fraudulent and unfair conduct, has reaped substantial and unconscionable profits from AT&T under its tariffs.  As such, Counterclaim Defendant has received monies to which it is not entitled.

62.     Counterclaim Defendant's unlawful conduct will continue unless the relief prayed for is granted.

**COUNT V**
**(Civil Conspiracy)**

63.     AT&T repeats and re-alleges each and every allegation contained in paragraphs 1 through 62 of its Counterclaims as if set forth fully herein.

21

64.     Upon information and belief, Counterclaim Defendant and one or more of the FCPs agreed to an illicit arrangement as follows:  (i) the FCPs would place a "bridge" in or outside the Counterclaim Defendant's service territory; (ii) the Counterclaim Defendant would assign a telephone number or numbers to that bridge; (iii) the Counterclaim Defendant would bill AT&T for terminating switched access charges on long distance calls made by users of the calling service that were routed through the bridge; (iv) the Counterclaim Defendant would share with the FCPs a portion of the monies billed to or received from AT&T.

65.     As explained above, most of these calls do not terminate in Counterclaim Defendant's local calling areas.  Counterclaim Defendant's conduct in billing AT&T for terminating switched access service for these calls violates the terms of Counterclaim Defendant's federal and state access tariffs, federal law and state law.

66.     The agreements reached between Counterclaim Defendant with one or more of the FCPs constitute agreements to take unlawful actions.  The agreements between Counterclaim Defendant and one or more of the FCPs constitutes a civil conspiracy or conspiracies, and Counterclaim Defendant and the FCPs are liable for the harm caused by the unlawful acts taken in furtherance of the conspiracy.

67.     The unlawful actions taken during and in the furtherance of the unlawful agreements between Counterclaim Defendant and the FCPs have injured AT&T.  AT&T prays for damages against Counterclaim Defendant in an amount to be determined at trial, interest, attorneys' fees, court costs, declaratory relief, injunctive relief and other such relief as the Court may deem appropriate.

## COUNT VI
## (Declaratory Ruling)

68.     AT&T repeats and re-alleges each and every allegation contained in paragraphs 1 through 67 of the Counterclaims as if fully set forth herein.

69.     The bills rendered by Counterclaim Defendant to AT&T contain charges that purport to assess AT&T with terminating switched access charges for calls for which Counterclaim Defendant did not terminate or did not provide switched access services.

70.     The inclusion of these access charges in bills submitted to AT&T violates the Counterclaim Defendant's federal and state access tariffs, the Communications Act, and the FCC's implementing rules and state law.

71.     AT&T is entitled to judgment under 28 U.S.C. § 2201(a) declaring that (i) Counterclaim Defendant is not providing terminating switched access services to AT&T in connection with the calls routed to the FCPs; (ii) the interstate and intrastate access charges that appear in the bills rendered by the Counterclaim Defendant to AT&T violate its interstate and intrastate tariffs, the Communications Act and the FCC's implementing rules, and state law; and (iii) AT&T is not obligated to pay the interstate or intrastate charges that appear in the bills rendered by the Counterclaim Defendant to AT&T that contain charges for calls made using the services of the FCPs.

WHEREFORE, for the reasons stated above, AT&T respectfully requests that judgment be entered for AT&T on each and all of its claims, together with appropriate damages, declaratory relief, injunctive relief, reasonable costs and fees, including attorneys' fees and expert fees, and interest together with such other and further relief as the Court may deem just and equitable under the circumstances.

NY1 6735211v.1

Dated: New York, New York
       September 9, 2008

SIDLEY AUSTIN LLP

By: /s/ Steven M. Bierman

    Steven M. Bierman (SB-6615)
    Benjamin R. Nagin (BN-0539)

787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Attorneys for Defendant
AT&T Corp.

Of Counsel:
James F. Bendernagel, Jr.
David L. Lawson
Michael J. Hunseder
Sidley Austin LLP
1501 K Street, N.W.
Washington, D.C.  20005
(202) 736-8000

David W. Carpenter
Sidley Austin LLP
One South Dearborn Street
Chicago, IL  60603
(312) 853-7000

Lawrence J. Lafaro
Brian W. Moore
AT&T Corp.
One AT&T Way
Bedminster, New Jersey  07921
(908) 234-6263

NY1 6735211v.1